IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DORIAN D. BAILEY,

    Petitioner,                      No. CIV S-10-0084 JAM CKD P

    vs.

GREG LEWIS[1],

    Respondent.                   FINDINGS & RECOMMENDATIONS

         Petitioner, a state prisoner represented by counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1 ("Ptn.")) Pending is respondent's September 13, 2010 motion to dismiss, arguing that the petition is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Petitioner filed an opposition, and respondent filed a response. On August 18, 2011, the undersigned issued an order setting for evidentiary hearing the issue of whether the limitations period was equitably tolled due to petitioner's mental illness. That hearing took place on February 21, 2012.

\\\\\

---

[1] Greg Lewis, the warden at petitioner's current place of incarceration, is hereby substituted as the respondent in this action. See Fed. R. Civ. P. 25(d); Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992).

For the reasons discussed below, the undersigned will recommend that respondent's motion to dismiss be granted.

As the district court has yet to review this court's August 18, 2011 findings as to statutory tolling (Dkt. No. 38), they are repeated here in their entirety, along with the relevant background. The section on equitable tolling concerns the evidence presented at the February 21, 2012 hearing.

## BACKGROUND

In 2004, a jury convicted petitioner of thirteen counts charging various sex offenses and one count of first degree robbery. The jury also found charged enhancements to be true. On July 9, 2004, the Sacramento County Superior Court imposed an aggregate unstayed sentence of two consecutive terms of 25 years to life plus 54 years. (Lod. Doc. 1[2]; Lod. Doc. 2 at 1-2.)

On May 26, 2006, the California Court of Appeal, Third Appellate District, affirmed the judgment. (Lod. Doc. 2.) Petitioner sought review in the California Supreme Court (Lod. Doc. 3), which was denied on August 16, 2006 "without prejudice to any relief to which defendant might be entitled after the United States Supreme Court determines in Cunningham v. California, No. 06-6551, the effect of Blakely v. Washington (2004) 542 U.S. 296 and United States v. Booker (2005) 543 U.S. 220, on California law." (Lod. Doc. 4.) On November 3, 2006, petitioner filed a petition for writ of certiorari in the United States Supreme Court, which was granted on February 20, 2007. The Supreme Court vacated the judgment and remanded for further consideration in light of Cunningham v. California, 549 U.S. 270 (2007). (Lod. Doc. 5.) On August 15, 2007, the California Court of Appeal, Third Appellate District, affirmed petitioner's sentence on remand. (Lod. Doc. 6, Ex. A.) On September 26, 2007, petitioner filed

---

[2] Unless otherwise indicated, lodged documents are those lodged by respondent on September 24, 2010 in conjunction with the motion to dismiss. (Dkt. No. 21.) Documents later lodged by the parties for purposes of the evidentiary hearing will be identified as such.

2

a second petition for review in the California Supreme Court, which was summarily denied on October 31, 2007. (Lod. Docs. 6, 7.)

Petitioner subsequently filed one state post-conviction collateral challenge. On January 29, 2009, he filed an application for writ of habeas corpus in the Sacramento County Superior Court. (Lod. Doc. 8.) On March 6, 2009, the superior court denied the petition, citing In re Robbins, 18 Cal. 4th 770, 811-812 (1998); and In re Clark, 5 Cal. 4th 750, 774-75 (1993). (Lod. Doc. 9.)

Petitioner filed the instant action on January 11, 2010. (Dkt. No. 1.) Under the mailbox rule, a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court." Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001); Houston v. Lack, 487 U.S. 266, 276 (1988). The mailbox rule applies to federal and state petitions alike. Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010). It has been held that the date the petition is signed may be inferred to be the earliest possible date an inmate could have submitted his petition to prison authorities for filing under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n. 2 (9th Cir. 2003), overruled on other grounds, Pace v. DiGuglielmo, 544 U.S. 408 (2005). Here, petitioner signed the petition on November 16, 2009, nearly two months before the petition was docketed. (Ptn. at 6.) While it is not clear that petitioner handed the petition over to prison authorities on this date – or, if so, why the petition was not actually filed until mid-January 2010 – the court will deem the petition constructively filed on November 16, 2009.

**MOTION TO DISMISS**

Respondent moves to dismiss the pending habeas petition, arguing that it is time-barred under AEDPA. Specifically, respondent argues that petitioner's judgment of conviction became final on January 29, 2008, and petitioner had one year thereafter in which to file a federal habeas petition challenging that decision. (Dkt. No. 20 (hereinafter "MTD") at 3-4.)

\\\\\

Respondent acknowledges that the proper filing of a state post-conviction application presenting the pertinent claims tolls the statute of limitations period. 28 U.S.C. § 2244(d)(2). However, respondent contends that petitioner did not properly file any state collateral actions within the limitations period. As to plaintiff's state habeas petition filed in the Sacramento County Superior Court on January 29, 2009, respondent contends that, because the superior court found the petition untimely, it was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2) and therefore did not toll the federal limitations period. Respondent further contends that, even if the limitations period was tolled during the pendency of petitioner's state habeas petition, the instant action nonetheless was filed several months after the limitations period expired.

In opposition to the motion to dismiss, petitioner does not dispute respondent's statutory tolling analysis, but argues that the limitations period should have been equitably tolled due to petitioner's lifelong mental illness and the "strong medications" he was taking during the relevant time period. Petitioner claims, through counsel, that these conditions rendered him mentally unable to prepare his federal habeas petition or to timely assist in its preparation and filing. (Dkt. No. #27 (hereinafter "Opp.") at 5-6.) Petitioner also asserts that "problems with slow prison mail" and petitioner's transfers between prisons and to a hospital, respectively, interfered with his ability to send and receive mail during the relevant period. (Id. at 5.)

In reply, respondent asserts that petitioner's "mental health records during his incarceration do not reflect a mental disorder of a severity that would prevent him from filing a timely federal petition." (Dkt. No. #36 (hereinafter "Reply") at 4.) Respondent also asserts that petitioner was not so diligent in pursuing his federal claims as to warrant equitable tolling of the AEDPA limitations period. (Id. at 5-6.)

**STATUTE OF LIMITATIONS UNDER THE AEDPA**

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable. See Lindh v.

Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). The AEDPA imposed a one-year statute of limitations on the filing of federal habeas petitions. Title 28 U.S.C. § 2244 provides as follows:

> (d) (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The AEDPA statute of limitations is tolled during the time a properly filed application for post-conviction relief is pending in state court. 28 U.S.C. § 2244(d)(2). The statute of limitations is not tolled during the interval between the date on which a decision becomes final and the date on which the petitioner files his first state collateral challenge. Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). Once state collateral proceedings are commenced, a state habeas petition is "pending" during a full round of review in the state courts, including the time between a lower court decision and the filing of a new petition in a higher court, as long as the intervals between petitions are "reasonable." See Evans v. Chavis, 546 U.S. 189, 192 (2006); Carey v. Saffold, 536 U.S. 214, 222-24 (2002).

In reviewing habeas petitions from California, the Ninth Circuit formerly employed a rule that where California courts did not explicitly dismiss a habeas petition for lack of timeliness, the petition was presumed timely. The Supreme Court rejected this approach and now requires the lower federal courts to determine whether a state habeas petition was filed within what California would consider a reasonable period of time. Chavis, 546 U.S. 189. When a state post-conviction petition is determined to be untimely by a state court, that is the end of the matter for purposes of § 2244(d)(2). Bonner v. Carey, 425 F.3d 1145, 1148 (9th Cir. 2005) (citing Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005)). See also Carey, 536 U.S. at 226.

## ANALYSIS

I. Commencement of the Running of the Limitation Period

In the present case, no circumstances appear to warrant the application of § 2244(d)(1)(B) through (D). Thus, the court will determine the date on which the judgment became final within the meaning of § 2244(d)(1)(A).

Under § 2244(d)(1)(A), the "judgment" refers to the sentence imposed on the petitioner. Burton v. Stewart, 549 U.S. 147, 156-157 (2007). The last sentence was imposed on petitioner on July 9, 2004. (Lod. Doc. 1.)

Under § 2244(d)(1)(A), a judgment becomes final either upon the conclusion of direct review or the expiration of the time for seeking such review in the highest court from which review could be sought. Wixom v. Washington, 264 F.3d 894, 897 (9th Cir. 2001). The statute commences to run pursuant to § 2244(d)(1)(A) upon either 1) the conclusion of all direct criminal appeals in the state court system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or 2) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state court system followed by the expiration of the time permitted for filing a petition for writ of certiorari. Wixom, 264 F.3d at 897 (quoting Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir.1998), cert. denied, 525 U.S. 1187 (1999)).

1   Here, petitioner's direct review concluded when his second petition for review was denied by the California Supreme Court on October 31, 2007. (Lod. Doc. 7.) The time for seeking further review expired ninety days later, when the period in which petitioner could petition for a writ of certiorari from the United States Supreme Court expired. Supreme Court Rule 13; Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999). The ninety-day period began on November 1, 2007 and concluded on January 28, 2008.

Thus, the limitation period began to run on January 30, 2008 and concluded one year later on January 29, 2009. 28 U.S.C. § 2244(d)(1); Fed. R. Civ. P. 6(a). Because the petition in the instant case was not constructively filed until November 16, 2009, absent tolling the petition is time-barred.

II. Statutory Tolling

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2).

State time limits are conditions to filing which render a petition not properly filed. Pace, supra, 544 U.S. at 417. When a state court rejects a petition for post-conviction relief as untimely, the petition is not a "properly filed" application for post-conviction or collateral review within the meaning of § 2244(d)(2), and thus it does not toll the running of the limitation period. Id.

Here, petitioner filed one state post-conviction collateral challenge. On January 29, 2009, he filed an application for writ of habeas corpus in the Sacramento County Superior Court. (Lod. Doc. 8.) On March 6, 2009, the superior court denied the petition, citing In re Robbins, 18 Cal. 4th 770, 811-812 (1998); and In re Clark, 5 Cal.4th 750, 774-75 (1993). (Lod. Doc. 9.) The superior court's citation to Robbins and Clark was a clear ruling that the petition was untimely. See Thorson v. Palmer, 479 F.3d 643, 645 (9th Cir. 2007) ("[T]he California

7

1 Supreme Court's citation to Robbins was a clear ruling that Thorson's petition was untimely.")
2 Thus, the state habeas petition was not "properly filed" so as to toll the running of the limitations
3 period.
4     In sum, petitioner constructively filed the instant petition more than nine months
5 after the AEDPA limitations period expired, unmitigated by statutory tolling.  Petitioner does not
6 dispute this, but argues that the petition is nonetheless timely due to equitable tolling.
7 III.  Equitable Tolling
8     The limitations period is subject to equitable tolling if the petitioner demonstrates:
9 "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance
10 stood in his way." Pace, supra, 544 U.S. at 418; see also Irwin v. Department of Veteran Affairs,
11 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir.1998),
12 citing Alvarez–Machain v. United States, 107 F.3d 696, 701 (9th Cir.1996), cert. denied, 522
13 U.S. 814 (1997).  Petitioner bears the burden of alleging facts that would give rise to tolling.
14 Pace, 544 U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir. 2002); Hinton v. Pac. Enters., 5
15 F.3d 391, 395 (9th Cir.1993).
16     Mental illness can, in certain circumstances, rise to the level of an "extraordinary
17 circumstance" beyond a petitioner's control that warrants equitable tolling.  Laws v. Lamarque,
18 351 F.3d 919, 923 (9th Cir. 2003). However, the circumstances must be exceptional. See Rhodes
19 v. Senkowski, 82 F. Supp. 2d 160, 168–70, 173 (S.D.N.Y. 2000); also U.S. v. Sosa, 364 F.3d
20 507, 512 (4th Cir. 2004) ("As a general matter, the federal courts will apply equitable tolling
21 because of petitioner's mental condition only in cases of profound mental incapacity").  In
22 addition, petitioner must show that the alleged mental incompetence "in fact" caused him to fail
23 to file a timely habeas petition.  Laws, 351 F.3d at 923.
24     In Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010), the Ninth Circuit had occasion to
25 consider when a petitioner's mental condition may constitute an extraordinary circumstance
26 justifying equitable tolling of the untimely filing of a habeas petition.  In Bills, the Ninth Circuit

set forth a two-part test to determine a petitioner's eligibility for equitable tolling due to mental impairment:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, see [Holland v. Florida, 560 U.S. ——, 130 S.Ct. 2549, 2562 (2010)], by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance. See id.

Bills, 628 F.3d at 1099–1100.

Here, the relevant period is between January 30, 2008, when the one-year limitations period began, and November 16, 2009, when the instant petition was constructively filed. See Laws v. Lamarque, 351 F.3d 919, 932 (9th Cir. 2009) ("After a hearing, Laws was adjudicated competent to stand trial in 1993, notwithstanding evidence of serious mental illness. But that determination has little bearing on his competence *vel non* during the period 1996-2000" – i.e., "the years when his petitions should have been filed.")  An evidentiary hearing on whether equitable tolling applied during this period was held on February 21, 2012.  Both parties were instructed that "the only evidence which will be considered . . . whether petitioner is entitled to equitable tolling will be the evidence presented at the evidentiary hearing." (Dkt. No. 38 at 10.) Both parties lodged documents in advance of the hearing, which the court has reviewed.[3]

Petitioner was represented by counsel Mark Eibert, who argued that submitted records showed that, during the relevant period, petitioner consistently (1) was diagnosed with

---

[3] Documents lodged by the parties in February 2012 in anticipation of the evidentiary hearing will be referred to as Pet.'s Lod. Doc. # (EH) and Resp't's Lod. Doc. # (EH).

9

schizophrenia and depression, (2) experienced audio and visual hallucinations, and (3) was being administered multiple psychotropic drugs.  Petitioner also spent much of 2009 in a mental health crisis bed at Salinas Valley Prison.  Having reviewed the records submitted, the undersigned finds this representation to be accurate.  For example, a December 2008 report notes that petitioner claimed to hear the voices of dead family members in his cell, and to see "spirits jump into people he is talking to." (Resp't's Lod. Doc. 1 (EH) at 1002.)  In a June 2009 report referring petitioner to the Department of Mental Health, he was described as experiencing audio and visual hallucinations, depressed, and "chronically suicidal." (Resp't's Lod. Doc. 2 (EH) at 1374-1375.)  Numerous records indicate that petitioner was prescribed drugs for the treatment of schizophrenia, depression, and other serious mental illnesses during the relevant time frame. (Resp't's Lod. Doc. 1 (EH) at 27-29, 45-47, 56, 62-64, 218-288, 461, 999-1000, 1013.)  Records also indicate that, in 2009, petitioner was assigned to a mental health crisis bed at Salinas Valley State Prison at least 18 times.[4]  (Id. at 10, 14, 17, 21, 23, 26, 31, 33, 36, 38, 40, 44, 51, 53, 57, 67, 923, 956.)  In March 2009, a psychologist noted that petitioner's "fund of information, intellectual functioning, concentration, attention, and memory" were "all compromised" and that petitioner had a "poor memory" and was a "poor historian."  Petitioner's GAF score was assessed at 33.[5]  (Id. at 987-991.)

\\\\\

---

[4] At the hearing, counsel explained that inmates are referred to mental health crisis beds by psychiatrists for acute mental health problems, and can remain there for up to 10 days before requiring readmission.

[5] "GAF" is an acronym for "Global Assessment of Functioning," a scale used by clinicians to assess an individual's overall level of functioning, including the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders with Text Revisions 32 (4th ed. 2004).  A GAF of 31-40 indicates: " Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)" Id. See Stone v. Knipp, No. 2:11-cv-1605 KJN P, 2011 WL 5526417 at *6 (E.D. Cal. Nov. 14, 2011).

Petitioner's counsel called one witness: petitioner's mother J. Y'Vonne Heriveaux.  In a sworn declaration filed December 30, 2010 in support of petitioner's opposition to the  motion to dismiss, Ms. Heriveaux stated that petitioner had

> suffered from serious mental health issues for most of his life.
>
> Because he was mentally unable to prepare his federal habeas corpus petition himself, and I was very familiar with his case, I did most of the work on it.  I sent the first habeas petition to Dorian in prison no later than December 2008, asking him to review it, sign and mail it to the Court.  When he did not do so, I sent it again around the beginning of February 2009, and several times thereafter until I finally got a response.
>
> From my conversations and correspondence with Dorian, I know that the reason he did not review and either return to me or file with the court the habeas petition I helped to prepare was due to his mental condition and the strong medications he was taking for them, which made him unable to understand the importance of the materials or even to remember to deal with them.

(Dkt. No. 27-1.) In its August 18, 2011 order setting the evidentiary hearing, the undersigned wrote that, as Ms. Heriveaux's declaration did not "supply any details as to [petitioner's] mental state or ability to function during that time," it did not resolve whether equitable tolling was applicable. (Dkt. No. 38 at 9.)

At the hearing, Ms. Heriveaux testified that, in 2008 and 2009, she spoke to petitioner on the phone roughly twice a month and visited him on five or six occasions. When she spoke to him in person, his speech was slurred and he was not "mentally coherent." He would laugh inappropriately, could not stay on topic, talked about hearing voices, was forgetful, and expressed thoughts of suicide.  She believed petitioner's condition was due to his being both mentally ill and heavily medicated.

Ms. Heriveaux testified that, from paperwork she had received concerning petitioner's case, she knew the deadline for filing a federal habeas petition was January 2009. Because petitioner was in "another world" and unable to do it himself, she prepared his federal petition in May 2008 and mailed it to petitioner for his signature.  For some time afterward,

petitioner told her that he had not received the petition in the mail.  When he told her he had received it, she told him to sign it.  However, "he couldn't remember what I was talking about."

Ms. Heriveaux testified that she prepared a second petition for petitioner's signature and sent it to him around December 2008.  As soon as she received the signed petition from him, she filed it.  As noted above, the petition was signed – and thus, constructively filed – in November 2009.

Respondent was represented by Deputy Attorney General Sean McCoy, who argued that petitioner had failed to show his mental impairment was an "extraordinary circumstance" under Bills, or that he had acted with the requisite diligence.  In fact, counsel argued, documents in the record "cast doubt" on petitioner's claim that he was incapable of functioning during the relevant period.  For example, progress notes from February 2008 indicate that petitioner "had legal questions" and was directed to the law library, and that he "reported he has reviewed his medical records and they are to be mailed to his mother."  (Resp't's Lod. Doc. 1 (EH) at 1053-1054.)  Progress notes from July 2008 indicate that petitioner "spoke of letters he wrote to his mother and Aunt.  Currently, [inmate] appears alert, oriented and stable at this time[.]"  (Id. at 1031.)  Notes from October 2008 indicate that petitioner "says his mother writes him every few weeks.  When asked about his frequency of responses to her, he cogitated about 15 seconds before saying he writes to her 'now and then.'"  (Id. at 753.)

Having reviewed the submitted documents, the court also takes note of the following: In a health care services request form from March 2008, petitioner wrote: "I need some kind of energy drink because of my unnatural weight[.]"  (Id. at 175.)  In another request form dated April 2008, petitioner wrote: "Having realy [sic] bad head aches need pillow and pills[.]  And have a skin rash."  (Id. at 187.)  Similarly, in February 2008, plaintiff wrote a request stating: "Rash on face need cream[.]"  (Id. at 190.)  And in September 2008, plaintiff wrote a request stating: "I need to see the doctor because of a dizzy problem I've been having[.]"  (Id. at 192.)

Here, the evidentiary hearing made clear how little was required of petitioner to effect the filing of his federal habeas petition. It is undisputed that his mother prepared not one, but two, complete petitions and sent them to petitioner; all he had to do was sign one of them and return it to her. According to Ms. Heriveaux, he received the first petition-for-signature in May 2008 and a second one in late 2008 or early 2009. While it is undisputed that petitioner was heavily medicated and experiencing symptoms of mental illness in 2008 and 2009, the record shows that he was at least intermittently capable of writing letters, taking an interest in his legal issues, and writing simple requests. Nothing suggests that for several months he was incapable of even signing his name. Yet the operative petition was not signed until November 2009.

Under Bills, a petitioner seeking equitable tolling for mental illness must prove both that his mental condition was an "extraordinary circumstance" and that he showed "diligence in pursuing the claims to the extent he could understand them." 628 F.3d at 1099–1100. Even assuming arguendo that petitioner has met the first prong of the Bills test (which the court makes no finding on here), he has not carried his burden of proving diligence on the record before the court. Thus respondent's motion to dismiss the petition for untimeliness should be granted.

Accordingly, IT IS HEREBY RECOMMENDED THAT respondent's September 13, 2010 motion to dismiss (Dkt. No. 20) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

////

////

////

shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 16, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / bail0084.mtd_2