UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIAN D. BAILEY, | Case No. 2:10-CV-0084 JAM-CKD P |
| Petitioner, | |
| v. | ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS |
| GREG LEWIS, | |
| Respondent. | |

Petitioner, Dorian D. Bailey ("Petitioner"), a state prisoner represented by counsel, has filed this application for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254.  The matter was referred to United States Judge Carolyn Delaney pursuant to 28 U.S.C. Section 636(b)(1)(B) and Local Rule 302.

On March 16, 2012, Magistrate Judge Delaney issued Findings and Recommendations (Doc. #51) recommending the Court grant Respondent Greg Lewis's ("Respondent") Motion to Dismiss (Doc. #20).  Petitioner filed Objections to Magistrate Judge's Findings and Recommendations (Doc. #57). In accordance with the provisions of 28 U.S.C. Section 636(b)(1)(C) and Local Rule 304, this court has conducted a de novo review of this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2004, a jury convicted Petitioner of thirteen counts charging various sex offenses and one count of first degree robbery. On July 9, 2004, the Sacramento County Superior Court imposed an aggregate unstayed sentence of two consecutive terms of 25 years to life plus 54 years.

Since his 2004 conviction, Petitioner has sought review through the California appellate courts, in addition to the United States Supreme Court. After seeking and being denied review in the California Supreme Court on October 31, 2007, Petitioner subsequently filed one state post-conviction collateral challenge. On January 29, 2009, he filed an application for writ of habeas corpus in the Sacramento County Superior Court. On March 6, 2009, the Superior Court denied the petition as untimely.

Petitioner filed the instant federal writ of habeas corpus petition (Doc. #1) on January 11, 2010.[1] Applying the mailbox rule, the Magistrate Judge found that because petitioner signed the petition on November 16, 2009, the petition was constructively filed on November 16, 2009. See Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001) (holding that a pro se habeas petition is "deemed filed when [the petitioner] hands it over to prison authorities for mailing to the district court.").

Respondent moves to dismiss the pending habeas petition (Doc.

---

[1] Petitioner filed his Petition for Writ of Habeas Corpus pro se. Due to mental health concerns, on April 5, 2010, the Magistrate Judge previously presiding over the case ordered an attorney from the Federal Defenders Office to represent Petitioner (Doc. #4). On May 6, 2010, Petitioner substituted that attorney for Mark Eibert, Petitioner's current counsel (Doc. #12).

2

#20).  Respondent argues that the petition is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244.  Under AEDPA, Petitioner had one year to file a writ of habeas corpus running from the date on which the judgment became final by conclusion of direct review.  8 U.S.C. § 2244(d)(1)(A).

In the Findings and Recommendations, the Magistrate Judge finds that Petitioner's direct review concluded when his second petition for review was denied by the California Supreme Court and that the limitations period began to run on January 30, 2008 and concluded one year later on January 29, 2009.  Thus, because the petition in the instant case was not constructively filed until November 16, 2009, the Magistrate Judge finds that absent tolling, the petition is time-barred.

Petitioner does not challenge the Respondent's or the Magistrate Judge's AEDPA analysis, but instead argues that the limitations period should be equitably tolled due to his lifelong mental illness and the strong medications he was taking during the relevant time period.  The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010) (applying the Pace standard to petitioners with mental impairments).  Petitioner argues that his mental illness rendered him unable to prepare his federal habeas petition or to timely assist in its preparation and filing.

The Magistrate Judge conducted an evidentiary hearing on

1  February 21, 2012 to resolve the issue of whether the statute of
2  limitations should be equitably tolled.  Both parties lodged
3  documents containing Petitioner's mental health records in advance
4  of the hearing and Petitioner produced his mother, J. Yvonne
5  Heriveaux, as a witness.  Ms. Heriveaux testified that she prepared
6  the habeas petition "because he wasn't able to."  Tr. of
7  Proceedings Before the Honorable Carolyn K. Delaney U.S. Mag. J
8  (Doc. #56) at 25 [hereinafter "Tr."].  Ms. Heriveaux testified that
9  Petitioner "wasn't talking right, he wasn't remembering anything,
10 he was just like in another space in another world."  Id.  Ms.
11 Heriveaux stated that in about May 2008, she sent Petitioner the
12 petition to sign and return to her for filing, but Petitioner
13 repeatedly denied receiving it.  Ms. Heriveaux stated that when she
14 reminded him about signing the petition, he would reply "[w]hat
15 paper, mom?  What paper are you talking about?  That sort of thing.
16 He just could not remember what I was talking about."  Id. at 27,
17 28.  Ms. Heriveaux testified that she sent the petition to him a
18 second time in about November or December 2008, and reminded him to
19 sign and return it every time she talked to him.  Id. at 27-29, 38.
20 In sum, Ms. Heriveaux testified that Petitioner was unable to sign
21 the petition because his mental state was "just horrific."  Id. at
22 37.
23      Respondent presented evidence to cast doubt on Petitioner's
24 claim that he was incapable of functioning during the relevant
25 period.  For example, progress notes from February 2008 indicate
26 that Petitioner "had legal questions" and was directed to the law
27 library, and that he "reported he has reviewed his medical records
28 and they are to be mailed to his mother."  Tr. at 45.

4

The Magistrate Judge recommends that this Court grant Respondent's Motion to Dismiss. The Magistrate Judge makes no finding as to whether petitioner's mental condition was an "extraordinary circumstance," but does find that Petitioner has not carried his burden of proving "diligence." The Magistrate Judge found that Petitioner's mental illness did not make it impossible for him to effect the filing of his federal habeas petition. The Magistrate Judge reasoned,

> While it is undisputed that petitioner was heavily medicated and experiencing symptoms of mental illness in 2008 and 2009, the record shows he was at least intermittently capable of writing letters, taking an interest in his legal issues, and writing simple requests. Nothing suggests that for several months he was incapable of even signing his name.

Findings and Recommendations (Doc. #51) at 13:5-9.

Petitioner objects to the Magistrate Judge's Findings and Recommendations (Doc. #57). Respondent did not file a response.

## II.   OPINION

In <u>Bills v. Clark</u>, the Ninth Circuit set forth the standard for equitable tolling due to mental impairment. 628 F.3d 1092 (9th Cir. 2010). Petitioner must meet a two-part test:

> (1) <u>First</u>, a petitioner must show his mental impairment was an 'extraordinary circumstance' beyond his control by demonstrating the impairment was so severe that either
>
>> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>>
>> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) <u>Second</u>, the petitioner must show diligence in pursing the claims to the extent that he could understand them, but that the mental impairment made it impossible to meet

5

the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

628 F.3d at 1100 (internal citations omitted).

C. <u>Analysis</u>

Petitioner argues that the Court should equitably toll the statute of limitations. First, Petitioner argues he satisfies <u>Bills</u>' first requirement because his mental illness was an extraordinary circumstance beyond his control. Petitioner argues that the evidence before the Court leaves room for no other conclusion than that he satisfied the first, "extraordinary circumstance" prong of the <u>Bills</u> test. The Court agrees. During the relevant period, Petitioner consistently (1) was diagnosed with schizophrenia and depression, (2) experienced audio and visual hallucinations, and (3) was being administered multiple psychotropic drugs. Petitioner also spent much of 2009 in a mental health crisis bed in Salinas Valley Prison. In March 2009, a psychologist noted that Petitioner's "fund of information, intellectual functioning, concentration, attention, and memory" were "all compromised" and that petitioner had a "poor memory" and was a "poor historian." Tr. 5-7. Petitioner's GAF score was assessed at 33.[2] <u>Id.</u> at 6. In addition

---

[2] "GAF" is an acronym for "Global Assessment of Functioning," a scale used by clinicians to assess an individual's overall level of functioning, including the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders with Text Revisions 32 (4th ed. 2004). A GAF score of 31-40 indicates: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at

to the numerous reports detailing Petitioner's mental illness, the Court is persuaded by Ms. Heriveax's testimony in which she states that she sent him the petition twice, but due to his mental illness and the psychotropic drugs, he was unable to sign it.  For those reasons, the Court finds that Petitioner's "mental impairment made him unable to take steps to effectuate [the filing of the petition]."  Bills, 628 F.3d at 1100 n. 2.

As to the second Bills prong requiring diligence, Petitioner argues that the issue is not whether he was capable of signing his name, the issue is whether he was able to remember that he needed to sign his name and return the documents in the prison mail, whether his psychotically disorganized thinking made him able to understand the need to timely file, and whether he was mentally capable of doing that at the right time and place.  Petitioner argues that everything in the record, and especially the testimony of his mother at the hearing, supports the conclusion that he was mentally unable to cooperate with the assistance he had to sign his name and mail the papers back to her.

The Ninth Circuit explained that the diligence prong requires a

> 'totality of the circumstances' inquiry . . . [as to] whether the petitioner's impairment was a but-for cause of any delay.  Thus, a petitioner's mental impairment might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure.

Bills, 628 F.3d at 1100.

Here, the Magistrate Judge reasoned that since it could have

home, and is failing at school.)"  Id.

been possible for Petitioner to physically sign his name during the relevant time period, he does not satisfy the diligence requirement.  However, the Ninth Circuit clarifies that

> Despite the unequivocal 'impossibility' language in our standard, we have not insisted that it be literally impossible for a petitioner to file a federal habeas petition on time as a condition of granting equitable tolling.  We have granted equitable tolling in circumstances where it would have technically been possible for a prisoner to file a petition, but a prisoner would have likely been unable to do so.

Id. at 1100 n.3 (quoting Harris v. Carter, 515 F.3d 1051, 1055 n.5 (9th Cir. 2008)).

The record shows that Petitioner's mental illness made it impossible for him to cooperate with Ms. Heriveaux and get his petition filed in time.  During the entire relevant time period, Petitioner was continually administered psychotropic drugs and, for almost half of the relevant time period, he was restricted to a mental health crisis bed in prison.  Furthermore, Ms. Heriveaux's testimony illustrates that, despite her assistance, Petitioner's mental illness prevented him from completing the simple task of signing his habeas petition.  Ms. Heriveaux testified that despite numerous reminders to sign the petition, Petitioner could not remember what she was talking about.  Tr. at 27.  She testified that he was incoherent, had slurred speech, and talked to people who were not there, including spirits.  Id. at 27-30.  Based on the documented severity of Petitioner's mental illness, his continual use of psychotropic medications, his numerous stays at the mental health crisis bed, and his mother's testimony about his mental condition and the difficulty of getting him to merely sign his

petition, the Court finds that petitioner's "mental impairment made it impossible [for him] to meet the filing deadline under the totality of the circumstances[.]" Bills, 628 F.2d 1100.  Thus, the Court finds that Petitioner satisfies the diligence prong under Bills and that the statute of limitations should be equitably tolled.

III.   ORDER

For the reasons set forth above,

1. The Findings and Recommendations filed March 16, 2012 are adopted in part and rejected in part.  The Court adopts the Magistrate Judge's summation of the legal and factual background of the case, the application of the mailbox rule, the findings of the relevant time period for the statute of limitations under AEDPA, and the synopsis of the evidentiary hearing.  The Court rejects the Magistrate Judge's finding that Petitioner failed to show diligence under Bills and the Court rejects the recommendation that Respondent's Motion to Dismiss should be granted.

2. Respondent's September 13, 2010 Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Dated: August 17, 2012

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE