1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DORIAN D. BAILEY,                          No.  2:10-cv-0084 TLN CKD P

12                    Petitioner,

13            v.                                  FINDINGS AND RECOMMENDATIONS

14    GREG LEWIS,

15                    Respondent.

16

17            Petitioner, a state prisoner, is proceeding with counsel with a petition for writ of habeas

18    corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2004 conviction for multiple sex

19    crimes and related offenses, for which he was sentenced to a term of one hundred and four years

20    to life in state prison.  (ECF No. 1 ("Ptn.").)

21            In the instant action, following an evidentiary hearing on whether the statute of limitations

22    should be equitably tolled due to petitioner's mental illness, the petition was determined to be

23    timely.  (ECF Nos. 50, 58.)  Respondent has filed an answer to the petition, and petitioner has

24    filed a traverse.  (ECF Nos. 60, 66.)  Upon careful consideration of the record and the applicable

25    law, the undersigned will recommend that the petition be denied.

26    /////

27    /////

28    /////

BACKGROUND

I. Facts

In its affirmation of the judgment on appeal, the California Court of Appeal, Third

Appellate District, set forth the relevant factual background as follows:

> Given the nature of defendant's claims on appeal, a detailed
> description of the underlying offenses is unnecessary.  Suffice it to
> say, defendant sexually assaulted a teenager near her high school
> and sexually assaulted another woman in her own home.   Both
> attacks occurred on the same day.

(Lod. Doc. 16 at 2.)[1]  The facts as set forth by the state court of appeal are presumed correct

absent proof of error by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

II. Procedural History

A. State Proceedings

Following a jury trial in the Sacramento County Superior Court, petitioner was convicted

of 13 counts of sex offenses, specifically: two counts of kidnapping with intent to commit rape,

six counts of oral copulation by force, and single counts each of assault with intent to commit

rape, sodomy by force, attempted sodomy by force, rape by force, and sexual battery on an

unlawfully restrained victim.  Petitioner was also convicted of robbery of a person in an inhabited

dwelling.[2]  The jury additionally found charged enhancements to be true.[3]  The trial court

imposed an aggregate unstayed sentence of two consecutive terms of 25 years to life, plus 54

years.  (Lod. Docs. 1, 16 at 2.)

Petitioner appealed the judgment to the California Court of Appeal, Third Appellate

District.  (Lod. Docs. 10-12.)  On appeal, he argued that  judicial fact-finding at sentencing

violated his federal constitutional rights to a jury trial and proof beyond a reasonable doubt under

the Sixth and Fourteenth Amendments, among other arguments.  On May 24, 2006, the appellate

---

[1] Lodged Documents refer to documents lodged by respondent on December 27, 2012.  (ECF No. 63.)

[2] Cal. Penal Code § 209, subd. (b)(1); § 220; § 243.4, subd. (a); § 261, subd. (a)(2); §§ 664/286, subd. (c)(2); § 286, subd. (c)(2); § 288a, subd. (c)(2); and § 211.

[3] Cal. Penal Code §§ 667.61, subds. (a), (d)(2), (d)(4), and (e)(5).

1   court rejected petitioner's claims on the merits and affirmed his sentence.  (Lod. Doc. 2.)

2        Petitioner filed a petition for review in the California Supreme Court.  (Lod. Doc. 3.)  On

3   August 16, 2006, the supreme court denied the petition "without prejudice to any relief to which

4   defendant might be entitled after the United States Supreme Court determines in Cunningham v.

5   California, No. 05-6551, the effect of Blakely v. Washington (2004) 542 U.S. 296 and United

6   States v. Booker (2005) 543 U.S. 220, on California law."  (Lod. Doc. 4.)

7        On November 3, 2006, petitioner filed a petition for writ of certiorari in the United States

8   Supreme Court.  On February 20, 2007, the United States Supreme Court granted the petition,

9   vacated the judgment on appeal, and remanded the matter for further consideration in light of

10  Cunningham v. California, 549 U.S. 270 (2007).  (Lod. Doc. 5.)

11       The court of appeal directed the parties to submit supplemental briefs addressing the

12  Cunningham issues only.  (Lod. Doc. 16 at 1; see Lod. Docs. 14, 15.)  On August 15, 2007, the

13  court of appeal reissued its previous opinion with a new section addressing the Cunningham

14  issues, concluding that petitioner's sentencing was proper, and again affirming the judgment.

15  (Lod. Doc. 16.)  Petitioner filed a petition for review in the California Supreme Court, which was

16  denied on October 31, 2007.  (Lod. Docs. 6, 7.)

17       On January 29, 2009, petitioner filed a petition for writ of habeas corpus in the

18  Sacramento County Superior Court.  (Lod. Doc. 8.)  On March 6, 2009, the superior court denied

19  the petition.  (Lod. Doc. 9.)

20  B.  Federal Proceedings

21       Petitioner filed the instant federal habeas petition on January 11, 2010.  (Ptn.)  On April 5,

22  2010, the Federal Defender was appointed to represent petitioner.  (ECF No. 4.)  On May 6, 2010,

23  petitioner's current attorney Mark Eibert was substituted in as counsel.  (ECF No. 12.)

24       On September 13, 2010, respondent moved to dismiss the petition for untimeliness.  (ECF

25  No. 20.)  After the motion was briefed, the undersigned set the matter for an evidentiary hearing

26  to determine whether petitioner was entitled to equitable tolling of the limitations period due to

27  mental illness.  (ECF No. 38.)  Attorneys for both parties lodged records concerning petitioner's

28  mental health during the period of 2008-2009 and prior.  (ECF Nos. 48, 49.)

1    The hearing on equitable tolling took place on February 12, 2012.  (ECF No. 50.)  On

2    March 16, 2012, the undersigned issued findings that petitioner was not entitled to tolling due to

3    lack of diligence, and recommended that respondent's motion to dismiss be granted.  (ECF No.

4    51.)  Petitioner filed objections to the findings and recommendations (ECF No. 57), and on

5    August 17, 2012, the district court adopted in part and rejected in part the findings and

6    recommendations, concluding that petitioner was entitled to tolling and denying respondent's

7    motion to dismiss.  (ECF No. 58.)

8    On October 29, 2012, respondent filed an answer to the petition.  (ECF No. 60.)  On

9    March 12, 2013, petitioner filed a reply.  (ECF No. 66.)

10    <u>ANALYSIS</u>

11    I. <u>AEDPA</u>

12    The statutory limitations of federal courts' power to issue habeas corpus relief for persons

13    in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective

14    Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

15
16    > An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
17

18    > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
19

20    > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
21

22    As a preliminary matter, the Supreme Court has recently held and reconfirmed "that §

23    2254(d) does not require a state court to give reasons before its decision can be deemed to have

24    been 'adjudicated on the merits.'"  <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011).

25    Rather, "when a federal claim has been presented to a state court and the state court has denied

26    relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

27    of any indication or state-law procedural principles to the contrary."  <u>Id.</u> at 784-785, citing <u>Harris</u>

28    <u>v. Reed</u>, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear

1   whether a decision appearing to rest on federal grounds was decided on another basis).  "The

2   presumption may be overcome when there is reason to think some other explanation for the state

3   court's decision is more likely."  Id. at 785.

4        The Supreme Court has set forth the operative standard for federal habeas review of state

5   court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an unreasonable

6   application of federal law is different from an incorrect application of federal law.'"  Harrington,

7   supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410 (2000).  "A state court's

8   determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

9   jurists could disagree' on the correctness of the state court's decision."  Id. at 786, citing

10   Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  Accordingly, "a habeas court must

11   determine what arguments or theories supported or ... could have supported[] the state court's

12   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

13   arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id.

14   "Evaluating whether a rule application was unreasonable requires considering the rule's

15   specificity.  The more general the rule, the more leeway courts have in reaching outcomes in

16   case-by-case determinations.'"  Id.  Emphasizing the stringency of this standard, which "stops

17   short of imposing a complete bar of federal court relitigation of claims already rejected in state

18   court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not

19   mean the state court's contrary conclusion was unreasonable."  Id., citing Lockyer v. Andrade,

20   538 U.S. 63, 75 (2003).

21        The undersigned also finds that the same deference is paid to the factual determinations of

22   state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

23   subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

24   decision that was based on an unreasonable determination of the facts in light of the evidence

25   presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in §

26   2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

27   factual error must be so apparent that "fairminded jurists" examining the same record could not

28   abide by the state court factual determination.  A petitioner must show clearly and convincingly

5

1   that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338 (2006).

2   The habeas corpus petitioner bears the burden of demonstrating the objectively

3   unreasonable nature of the state court decision in light of controlling Supreme Court authority.

4   Woodford v. Viscotti, 537 U.S. 19 (2002).  Specifically, the petitioner "must show that the state

5   court's ruling on the claim being presented in federal court was so lacking in justification that

6   there was an error well understood and comprehended in existing law beyond any possibility for

7   fairminded disagreement."  Harrington, supra, 131 S. Ct. at 786-787.  Clearly established" law is

8   law that has been "squarely addressed" by the United States Supreme Court.  Wright v. Van

9   Patten, 552 U.S. 120, 125 (2008).  Thus, extrapolations of settled law to unique situations will not

10  qualify as clearly established.  See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established

11  law not permitting state sponsored practices to inject bias into a criminal proceeding by

12  compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards

13  does not qualify as clearly established law when spectators' conduct is the alleged cause of bias

14  injection).  The established Supreme Court authority reviewed must be a pronouncement on

15  constitutional principles, or other controlling federal law, as opposed to a pronouncement of

16  statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. 3, 9 (2002).

17  The state courts need not have cited to federal authority, or even have indicated awareness

18  of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8. Where the state

19  courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal

20  court will independently review the record in adjudication of that issue.  "Independent review of

21  the record is not de novo review of the constitutional issue, but rather, the only method by which

22  we can determine whether a silent state court decision is objectively unreasonable."  Himes v.

23  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

24  /////

25  /////

26  /////

27  /////

28  /////

6

II. Petitioner's Claims

A. Competency Hearing

1. Claim

Petitioner claims that the trial court deprived him of his federal constitutional right to due process of the law by failing to order a competency hearing on its own motion.[4]

In his traverse, petitioner, through counsel, asserts that the trial court should have held a competency hearing during petitioner's criminal trial due to the following factors: his lifelong history of serious mental illness; his 2004 entry of a plea of not guilty by reason of insanity, supported by psychological evaluations of petitioner and other evidence; his "psychotic" and "irrational" behavior in court; and post-trial markers of his mental illness and incapacity, including findings by the district court in this action and the underlying evidence warranting equitable tolling of the AEDPA limitations period.  (ECF No. 66.)

Respondent argues that petitioner has failed to show the trial court violated his clearly established federal constitutional rights by not inquiring, sua sponte, into his competency for trial. (ECF No. 60.)

2. State Court Decision

In the last reasoned decision on this claim, the state court of appeal wrote:

*Competence to Stand Trial*

Although defendant's attorney did not raise any concerns about defendant's competence to stand trial, defendant asserts the court erred in failing to order a competency hearing on its own motion. Defendant's claim of error is without merit.

Section 1367, subdivision (a) provides that a defendant is mentally incompetent to stand trial if, "as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

"A defendant is presumed competent unless it is proved otherwise by a preponderance of the evidence. [Citation.] As a matter of due

---

[4] While petitioner does not clearly state this claim in his federal petition, filed before he was represented by counsel, he presented this claim to the California Supreme Court.  (Lod. Doc. 6.) It appears that petitioner intended to assert this exhausted claim on federal habeas review.  (See Ptn. at 4.)

process, the state may not try or convict a mentally incompetent defendant. [Citations.] Under section 1367, subdivision (a), a defendant 'cannot be tried or adjudged to punishment while he is mentally incompetent.' Section 1368, subdivisions (a) and (b) respectively, require the trial court to initiate proceedings in order to determine a defendant's present sanity if 'a doubt arises in the mind of the judge as to the mental competence of the defendant' or '[i]f counsel informs the court that he or she believes the defendant is or may be mentally incompetent.' To be competent to stand trial, defendant must have '"'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him.'"' [Citation.]

"If a defendant presents substantial evidence of his lack of competence and is unable to assist counsel in the conduct of a defense in a rational manner during the legal proceedings, the court must stop the proceedings and order a hearing on the competence of issue. [Citations.]   In this context, substantial evidence means evidence that raises a reasonable doubt about the defendant's ability to stand trial. [Citation.] The substantiality of the evidence is determined when the competence issue arises at any point in the proceedings. [Citation.] The court's decision whether to grant a competency hearing is reviewed under an abuse of discretion standard.

"Substantial evidence of incompetence may arise from separate sources, including the defendant's own behavior.  For example, if a psychiatrist or psychologist 'who has had sufficient opportunity to examine the accused, states under oath with particularity that in his professional opinion the accused is, because of mental illness, incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel, the substantial-evidence test is satisfied.' [Citation.] If a defendant presents merely 'a litany of facts, none of which actually related to his competence at the time of sentencing to understand the nature of that proceeding or to rationally assist his counsel at that proceeding,' the evidence will be inadequate to support holding a competency hearing. [Citation.] In other words, a defendant must exhibit more than bizarre, paranoid behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel." (People v. Ramos (2004) 34 Cal.4th 494, 507-508.)

"A trial court is not under a duty to order a hearing on a defendant's mental incompetence to stand trial, in the absence of a request, unless it has been presented with 'substantial evidence of mental incompetence,' i.e., 'evidence that raises a reasonable doubt on the issue.' " (People v. Alvarez (1996) 14 Cal.4th 155, 211 .) No such evidence appears here.

Defendant contends evidence of incompetence to stand trial can be found in the reports of Doctors Roeder and Wilkenfield, two psychologists who examined defendant in March 2004 for purposes

of his plea of not guilty by reason of insanity. These reports are of little, if any, relevance. An assessment of an individual's sanity at the time of committing a crime focuses on issues entirely distinct from those relevant to assessing an individual's competency to stand trial.   (People v. Campbell (1987) 193 Cal.App.3d 1653, 1662, fn. 3.)

Moreover, nothing in these reports provided substantial evidence that defendant suffered from a mental disorder or developmental disability that made him unable to understand the nature of the criminal proceedings or assist counsel in his defense.

Dr. Roeder concluded that defendant demonstrated symptoms of "a serious mental disorder" as well as "substance abuse and characterological difficulties." However, Dr. Roeder also described this mental disorder as being of a "relatively mild nature" and did not prevent defendant from "having the ability to understand the nature and quality of his acts, from making a plan of action, from being able to predict the natural and probable consequences of his actions and to distinguish right from wrong." Dr. Roeder noted that defendant was cooperative during the evaluation.

Dr. Wilkenfield also found defendant to be cooperative during his evaluation, and described him as "generally coherent, logical and reality oriented," with "occasional inappropriate laughter." Defendant was able to recount his personal history. Defendant scored in the average range on intelligence tests, although he was in the borderline range for abstract thinking. On a test for exercising appropriate practical and social judgment, defendant scored in the range associated with mild mental retardation.   Dr. Wilkenfield observed that defendant had "some limitations in his level of psychological insight and demonstrated some rather unusual affect, but he was not exhibiting evidence of any significant problems with reality testing, any obvious disturbance in his sensory processes or any other evidence of an acute impairment in his ability to appreciate the difference between right and wrong, or to understand the nature and quality of his acts."

The psychologists' reports did not provide substantial evidence of mental incompetence to stand trial. While the reports outlined defendant's various problems, there was not even a hint that defendant might be suffering from a mental disorder or developmental disability that made him unable to understand the nature of the criminal proceedings or to assist counsel in his defense.

Cases relied upon by defendant presented markedly different situations. For example, in People v. Castro (2000) 78 Cal.App.4th 1402, counsel informed the court that the defendant had difficulty understanding what was communicated to her, and the state Department of Rehabilitation characterized the defendant as having a "most severe disability." (Id. at p. 1417.)  No similar evidence was presented in the present case.

/////

9

1
2
3
4
5
6
7

Undeterred, defendant also claims that his behavior during the course of trial placed the court on notice that competency might be at issue. Defendant's behavior was inappropriate and insulting to the court, to witnesses and to the jury. For example, defendant laughed during witness testimony. But, as already noted, competence to stand trial is not at issue if a defendant simply exhibits "bizarre, paranoid behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel." (People v. Ramos, supra, 34 Cal.4th at p. 508.) In the trial court's view, defendant's disruptive conduct was an attempt to manipulate the system and delay trial. We agree. But his actions did not raise a question of his competency to stand trial.

8
9
10
11

In sum, there was no evidence that defendant suffered from a mental or developmental disability that made him unable to understand the proceedings or assist his attorney. Consequently, the trial court had no sua sponte obligation to order a competency hearing. Defendant's claim to the contrary fails. (See People v. Frye (1998) 18 Cal.4th 894, 952; People v. Alvarez, supra, 14 Cal.4th at pp. 211-212.)

12

(Lod. Doc. 16 at 3-8.)

13

3. Legal Standard

14

The trial of an incompetent defendant violates the Constitution's Due Process Clause. See

15

Indiana v. Edwards, 554 U.S. 164 (2008); Drope v. Missouri, 420 U.S. 162, 171 (1975). The

16

federal constitutional standard for competence to stand trial is whether the defendant has

17

"sufficient present ability to consult with his lawyer with a reasonable degree of rational

18

understanding" and whether he has "a rational as well as factual understanding of the proceedings

19

against him." Dusky v. United States, 362 U.S. 402 (1960) (per curiam). See also Godinez v.

20

Moran, 509 U.S. 389, 396 (1993) ("[A] person whose mental condition is such that he lacks the

21

capacity to understand the nature and object of the proceedings against him, to consult with

22

counsel, and to assist in preparing his defense may not be subjected to a trial") (quoting Drope,

23

420 U.S. at 171).

24

Federal courts have recognized two distinct aspects to competency claims: (1) a

25

procedural due process claim that may arise where a state court has failed to hold a competency

26

hearing where there was a "bona fide doubt" about the petitioner's competence; and (2) a

27

substantive due process claim, where a petitioner was tried and convicted or sentenced while he

28

was in fact, or "actually," incompetent. See, e.g., Davis v. Woodford, 384 F.3d 628, 644 (9th

1   Cir., as amended September 21, 2004); Williams v. Woodford, 384 F.3d 567, 603–04, 608 (9th

2   Cir. 2004).  See also Gonzales v. Walker, No. 02–02279 JSW, 2010 WL 3893577, at *16 (N.D.

3   Cal. 2010) ("failure to call a hearing is a procedural due process challenge; while trying

4   [defendant] despite his incompetence is a substantive due process challenge").

5          For a procedural due process claim regarding the denial of a competency hearing, the

6   Ninth Circuit has opined that under AEDPA it is clearly established Supreme Court precedent

7   that a trial court must sua sponte conduct a competency hearing whenever evidence before the

8   trial court raises a "bona fide doubt" about the defendant's mental competency.  See Stanley v.

9   Cullen, 633 F.3d 852, 860 (9th Cir. 2011) (citing Maxwell v. Roe, 606 F.3d 561, 568 (9th Cir.

10  2010)).  See also Pate v. Robinson, 383 U.S. 375, 385 (1966) (finding constitutional rights

11  abridged where petitioner failed to receive adequate hearing on competence to stand trial).  A

12  "bona fide doubt" exists where "a reasonable judge, situated as was the trial court judge whose

13  failure to conduct an evidentiary hearing is being reviewed, should have experienced a doubt with

14  respect to competency to stand trial."  Maxwell, 606 F.3d at 568 (citation omitted).  Although no

15  particular facts necessarily signal a defendant's incompetence, "evidence of a defendant's

16  irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand

17  trial are all relevant in determining whether further inquiry is required," and "one of these factors

18  standing alone may, in some circumstances, be sufficient."  Drope, 420 U.S. at 180; see also

19  Godinez, 57 F.3d at 695.

20         The federal habeas court reviewing such a procedural due process claim may only

21  consider the evidence that was before the trial judge.  Williams, 384 F.3d at 604; United States v.

22  Lewis, 991 F.2d 524, 527 (9th Cir. 1993).  A state trial or appellate court's finding that no

23  competency hearing was required is a factual determination entitled to deference unless it is

24  unreasonable within the meaning of § 2254(d)(2).  Mendez v. Knowles, 556 F.3d 757, 771 (9th

25  Cir. 2009); Davis, 384 F.3d at 644.

26  4.  Discussion

27         In evaluating petitioner's procedural due process claim that the trial court failed to hold a

28  competency hearing, the undersigned considers the record before the trial judge.  That record

1  includes the following:

2         On August 22, 2003, petitioner's trial counsel, Douglas Hoffman, requested that the court

3  appoint a defense expert to conduct a psychological evaluation of petitioner.  (Clerk's Transcript

4  (CT) 124.)  In support, Hoffman submitted a declaration stating that, "[a]fter confronting

5  defendant with the DNA evidence in this case, defendant still maintains that he never spent any

6  time with either victim and has no recollection of any events during the time period" of the

7  alleged offenses.  (CT 128.)  Hoffman also submitted: (1) a January 2001 letter from Florida

8  psychiatrist Dr. Stephen Kanfer, stating that petitioner was under Kanfer's care for his

9  "psychiatric condition" and opining that petitioner required "further psychiatric treatment and

10  substance abuse treatment" (CT 132); and (2) a letter from attorney and consultant Kate Anderson

11  stating that, based on her 75-minute interview with petitioner in August 2003, she concluded that

12  a psychiatric evaluation was warranted in his criminal case.  (CT 134-135.)  The trial court

13  granted this request.  (See CT 158.)

14         On February 10, 2004, petitioner entered a plea of not guilty by reason of insanity.  The

15  trial court appointed Dr. Eugene Roeder and Dr. Jayson Wilkenfield to evaluate petitioner to

16  determine whether such a plea was viable. (CT 162; Record of Transcript (RT) 1-5.)

17         On April 12, 2004, the trial court held a hearing on the request by the Sacramento

18  Sheriff's Court Security Division to have petitioner "appropriately restrained" during trial, citing

19  petitioner's "disruptive, non-conforming, and hostile behavior" while incarcerated at the

20  Sacramento County Main Jail.  Described as "easily agitated . . . when things do not go as he

21  desires," petitioner had received ten "major write-ups," including assaulting another inmate and

22  jail staff.  The trial court ordered that petitioner be secured to his chair during trial, with only his

23  writing hand free of restraints.  (CT 171-173; RT 14-17.)

24         On April 19, 2004, the court addressed petitioner's plea of not guilty by reason of

25  insanity.   The undersigned has reviewed the March 2004 psychological reports by Dr. Roeder

26  and Dr. Wilkenfield, submitted in this federal action in a supplemental lodging.   (ECF No. 70.)

27  Both doctors evaluated petitioner shortly before trial at the Sacramento County Jail, where he had

28  been placed in the psychiatric unit.  (Id. at 226.)  Dr. Roeder noted that petitioner was hospitalized

12

in 2000 for reported homicidal and delusional behavior, but discharged after three days.  (Id.)  At

that time, and in subsequent psychiatric evaluations in 2000, it was not clear to what extent

petitioner's mental problems stemmed from his ongoing drug and alcohol abuse.  (Id. at 226-227.)

In 2004, when Dr. Roeder asked petitioner why he was in the psychiatric unit, petitioner stated

that his "mind goes hysterical.  When I walk, I have to clutch my body."  And: "When I try to

think regular, my mind collapses.  I have to whisper to myself to know myself."  (Id. at 227.)  Dr.

Roeder concluded that petitioner "did not present as exaggerating his psychiatric difficulties" and

"possesses a serious mental disorder[5] which will require ongoing attention both during and

following the adjudication of the charges against him."  (Id. at 228.)  However, Dr. Roeder also

characterized petitioner's disorder as "relatively mild" and found that he would not qualify for a

finding of not guilty by reason of insanity.  (Id.)

During Dr. Wilkenfield's evaluation, petitioner was alert, oriented, and cooperative,

though he was also "somewhat evasive" and avoided eye contact.  (Id. at 216.)  Occasionally, he

laughed for no apparent reason or rapidly shook his head back and forth.  (Id. at 216-217.)

Petitioner "spoke in complete, complex sentences" and his thinking was "generally coherent,

logical, and reality oriented.  He exhibited no evidence of any flagrant delusional ideation during

the course of the examination, and he denied experiencing any unusual perceptual phenomenon in

any mode."  (Id. at 216.)  However, his memory, insight, and practical judgment were impaired or

limited.  (Id. at 217.)  Dr. Wilkenfield detailed petitioner's history of "bizarre behavior,"

excessive drinking, and symptoms suggesting psychotic disorder or schizophrenia.  (Id. at 217-

219.)  Based on tests he administered, Dr. Wilkenfield concluded that petitioner was "currently

experiencing psychological dysfunction of mild to moderate severity" and did not appear to be

malingering.  (Id. at 220-221.)  Dr. Wilkenfield found that petitioner had a "significant substance

abuse problem" and a "history of psychiatric involvement" due to his erratic behavior.  (Id. at

223.)  However, in March 2004, "he was not exhibiting evidence of any significant problems with

_____

[5] Specifically, Dr. Roeder diagnosed petitioner as suffering from Psychotic Disorder NOS [Not
Otherwise Specified], Alcohol Abuse, Personality Disorder NOS, and a history of Attention
Deficit-Hyperactivity Disorder.  (Id.)

1  reality testing, any obvious disturbance in his sensory processes or any other evidence of an acute

2  impairment in his ability to appreciate the difference between right and wrong, or to understand

3  the nature and quality of his acts." (Id. at 222.)

4      Based on these reports, on April 19, 2004, petitioner's counsel withdrew petitioner's plea

5  of not guilty by reason of insanity. (RT 19-20.)

6      On April 20, 2004, one of petitioner's alleged victims, a high school student, took the

7  stand. As she testified, petitioner laughed. (RT 53, 66-67.) The court sent out the jury and

8  rebuked petitioner. (RT 67; CT 223.) Later that day, petitioner's counsel indicated that petitioner

9  wished to proceed on his plea by not guilty by reason of insanity. (RT 146-148.)

10     On April 21, 2004, the court admonished petitioner for "arguing" with the court about

11 bathroom breaks during trial. "You want me to sit here and hold my urine?" petitioner asked.

12     "Mr. Bailey, I want you to act like a gentleman in this courtroom," the trial court replied.

13 Petitioner began to speak, and the court repeated this statement. (RT 152.)

14     On April 27, 2004, after the jury entered, petitioner's counsel informed the court that

15 petitioner was "insisting that he doesn't feel well enough to proceed." The trial court noted that

16 petitioner had been examined by a doctor and medically cleared to attend court. (RT 438.)

17           THE DEFENDANT: He took my blood pressure. That's all he
             did. It's the doctor that I seen before. He doesn't take me serious.
18           I don't know why – there's a million doctors, and that one has to be
             the one that doesn't take me serious. I don't know why.
19

20           THE COURT: Mr. Bailey, it's the court impression that there are a
             number of reasons.

21           THE DEFENDANT: I don't know if you have migraines or not.

22           THE COURT: . . . To the extent you get ill, you can use the trash
             can. It's my impression and my view, Mr. Bailey, that you
23           continue to attempt to manipulate the court system, and we're not
             going to do that today. So we're going forward with the trial today.
24
             THE DEFENDANT: I don't see nothing wrong. You go home
25           every day to your family and kids. I'm locked in jail, and I'm sick,
             and I have to be here. Nobody loses nothin'.
26
             THE COURT: You've been medically cleared, and we're going to
27           go forward today. Let's bring in the jury.

28

14

(RT 438-439.)   After the jury was seated, petitioner's counsel approached the bench and stated that petitioner did not wish to be present at trial that day. The court sent out the jury, explained to petitioner that he was waiving his right to be present, and had him sign a form to that effect.  (RT 440-442.)

Later that morning, after the jury was dismissed, the court made the following statement on the record:

> In addition, I thought it prudent, so that the record is very clear as to what occurred this morning, that the Court make the following findings on the record with respect to what this Court believes Mr. Bailey's attempt has been to manipulate the system and to delay this trial.

> . . . On the first day of trial, Mr. Bailey, for the first time, indicated to the Court and counsel that he wanted to enter an NGI plea and, in fact, did so.

> The matter was continued so that doctors would properly be able to have an opportunity to meet with Mr. Bailey and make a report to counsel and the Court.  That was done.  On the first day of jury selection, once the reports had been received and counsel was ready to proceed in the matter, Mr. Bailey refused to dress in the civilian clothes that his mother had brought to court for him.  The case was delayed somewhat because of his refusal.

> Ultimately, the Court indicated that Mr. Bailey was to be brought to court no matter what he was wearing[.]  . . .

(RT 501-502.)  The court described the "bathroom break" incident and further noted that petitioner "behaved inappropriately during the testimony of both named victims in this case," including making "guffaws and noise" during the second victim's testimony.  The court found that petitioner "did so in an effort to further delay the trial and manipulate the process."  The court then described that morning's incident in which petitioner stated he was having "difficulty breathing," and was transported back to jail, examined by a doctor, and sent back to court, where he ultimately waived his right to be present for the day.  "It is this Court's belief that Mr. Bailey does and says things in order to manipulate and delay the process," the court concluded, adding that petitioner was expected to return to court the next day.  (RT 502-503.)

On April 28, 2004, the jury began deliberations.  The next day, while the jury continued to deliberate, the court informed petitioner that, if the jury returned a verdict of guilty, he had a right

to a jury trial on whether he was legally insane during the commission of the offenses.  Petitioner

indicated that he understood this right and was willing to waive it.  (RT 622-623.)

However, when the jury came back with guilty verdicts on all charges and allegations,

petitioner interjected that this outcome was "bullshit" and continued to curse at the jury and

disrupt proceedings until he was ordered removed from the courtroom.  (RT 633-634.)

Subsequently, the court noted on the record:

> The Court had Mr. Bailey removed after the Court had polled the jury and recorded the verdicts because he was using an extreme amount of profanity.  He was yelling.  He was out of control. Notwithstanding the fact that he was shackled to the chair, he was able to get up.  Upon walking him out of the courtroom, he continued to be not only verbally abusive, but physically threatening.  It took two officers to restrain him.
>
> He was able to take the chain that he was restrained with and knock over a number of files and items off the clerk's desk as he walked past her.  Again, it was very difficult to physically restrain him. [He was removed from the courtroom], but that was only done when the Court had already taken the verdicts, the verdicts had been recorded, and the jury was about ready to be released and the admonitions lifted.

(RT 635.)

On May 4, 2004, during the sanity phase of the trial, defense counsel introduced medical

records from Florida concerning petitioner's mental health.  In February 2000, following

petitioner's brief stay in a mental health facility after threatening to kill family members, a

Florida psychiatrist evaluated petitioner in a "discharge summary."   The report documents

petitioner's mother's statement that

> he was very volatile, talks to the television and thinks it talks back to him, thinking the moon can go up and down.  . . . Patient did apparently tell someone on the crisis team that he did think the t.v. was talking to him and that it talked to everybody, however, by the time I saw him he was denying all that.

(Augmented CT at 4.)  The psychiatrist noted that petitioner's speech, though "rambling [and]

angry," was "coherent and organized" and he denied any auditory or visual hallucinations.

Petitioner's sister and aunt were unaware that petitioner had mental problems, petitioner had no

signs of psychotic symptoms, and his behavior "possibly could have been drug related."  (Id. at 4-

5.)

1        In October 2000, another psychiatrist evaluated petitioner, concluding that he had

2   a history of symptoms highly suggestive of psychotic behavior or schizophrenia.  However, the

3   patient's problem with alcohol and drug use may be contributing to this behavior."  The

4   psychiatrist noted that petitioner was "alert and oriented" with "fair" calculation, insight, and

5   judgment.  (Augmented CT at 29-31.)

6        At the hearing on his insanity plea, petitioner testified that he had no memory of events on

7   the day of the rapes, as he had been drinking and sometimes blacked out.  (RT 646.)  He also

8   testified that he spent the day with people other than the two victims, whom he had never met.

9   (RT 647.)  He testified that his memory was impaired because, at some point, his "brain just

10   collapsed.  I don't know if it's from drugs or what."  (RT 652-653.)

11        No other witnesses testified at this phase of the trial.  The court found that there was no

12   evidence to sustain a finding of insanity and rejected petitioner's plea.  (CT 390.)  After

13   petitioner's sentence was announced, he was removed from the courtroom due to a lengthy and

14   profane outburst in which he referred to the trial court as a "stupid bitch," among other

15   statements.  (RT 679-680.)

16        Having carefully reviewed this record, the undersigned concludes that the state courts'

17   finding that no competency hearing was required was a reasonable factual determination under §

18   2254(d)(2).   Specifically, it was reasonable to find that the evidence before the trial judge did not

19   raise a "bona fide doubt" about petitioner's competency to stand trial.  While petitioner had a

20   history of mental illness, likely exacerbated by drug and alcohol use, none of the psychiatric

21   reports before the trial judge suggested that petitioner could not understand what was happening

22   at trial or assist his own attorney.  In fact, the most recent reports of petitioner's condition, by Dr.

23   Roeder and Dr. Wilkenfield, indicated that petitioner was coherent, alert, reality-oriented, and

24   able to carry on a conversation, despite his evident mental disorder(s) and unusual behavior.

25   Having reviewed these reports, petitioner's attorney withdrew his plea of not guilty by reason of

26   insanity.  Finally, while petitioner's behavior at trial could be described as "irrational" and

27   "psychotic," it could also be described as hostile, defiant, and manipulative; it is clear from the

28   record that the trial judge held the latter view.  In light of petitioner's insanity plea (against the

17

1  recommendation of both court-appointed experts), the trial judge's belief that petitioner was

2  trying to "manipulate" the proceedings was reasonable, and her failure to order a competency

3  hearing did not violate petitioner's right to procedural due process.  Thus petitioner is not entitled

4  to habeas relief on this claim.

5  B.  Upper Term Sentence

6  1.  Claim

7      Petitioner was sentenced on July 9, 2004.  In determining whether to impose upper,

8  middle, or lower terms on multiple counts, the trial court found four aggravating factors to be true

9  by a preponderance of the evidence: (1) petitioner's acts "disclosed a high degree of cruelty,

10  viciousness, and callousness"; (2) "the victims in this case were particularly vulnerable"; (3) "the

11  manner in which these crimes were committed indicated planning and sophistication"; and (4)

12  petitioner's "prior convictions and juvenile adjudications are numerous."  (RT 675-676.)  The

13  trial court also found one mitigating factor: petitioner's "prior performance on juvenile probation

14  appeared to be satisfactory."  (RT 676.)  The trial concluded that the aggravating circumstances

15  outweighed the mitigating circumstances.

16      Accordingly, under California's Determinate Sentencing Law then in effect, the trial court

17  sentenced petitioner to a chain of upper-term sentences and ordered them to be served

18  consecutively.  When added to the two separate terms of 25 years to life for other counts,

19  petitioner's sentence totaled 50 years to life, followed by a consecutive 54 years in state prison.

20  (RT 675-678; CT 467-471.)

21      Petitioner argues that the imposition of upper-term sentences and full-term consecutive

22  sentences violated his federal constitutional rights to a jury trial and proof beyond a reasonable

23  doubt of all facts necessary to support a conviction.  He asserts that aggravating factors (1)-(3) are

24  irrelevant, and that aggravating factor (4) (petitioner's criminal record, consisting of juvenile and

25  adult misdemeanor convictions) is not sufficient to impose the "extremely harsh chain of upper

26  term consecutive sentences" that petitioner received.  (ECF No. 66 at 32.)

27      As set forth in the probation report considered at sentencing (the accuracy of which

28  petitioner does not dispute), petitioner's criminal record included three juvenile adjudications in

18

1996: two for vehicle theft and one for misdemeanor theft.  It also included adult convictions for misdemeanor theft in 1998 and misdemeanor petite theft in 2000.  (CT 443-444.)

2.  State Court Decision

In the last reasoned decision on this claim, the state court of appeal wrote:

*Sentencing Claims*

B. Cunningham Error[6]

In supplemental briefing, defendant contends that the trial court erred in imposing the upper term because the court relied upon facts not submitted to the jury and proved beyond a reasonable doubt, thereby violating the principles enunciated in Cunningham. We conclude that defendant's failure to raise this issue in the trial court forfeits any claim of error on appeal. In any event, Black II, compels a contrary conclusion.

In sentencing defendant to the upper term, the trial court found that defendant's acts disclosed a high degree of cruelty, viciousness and callousness (Cal. Rules of Court, rule 4.421(a)(1); undesignated rule references that follow are to the California Rules of Court), the victims were particularly vulnerable (rule 4.421(a)(3)), the crimes were committed in a manner indicating planning and sophistication (rule 4.421(a)(8)), and defendant's prior convictions and juvenile adjudications were numerous. (Rule 4.421(b)(2).)

The court found only one mitigating factor, namely, that defendant's prior performance on juvenile probation appeared to be satisfactory.  (Rule 4.423(b)(6).)  The court concluded that the aggravating circumstances "clearly and far outweigh any mitigating circumstance, and it does warrant the imposition of the high term."

The Attorney General contends that defendant has forfeited any claim of error because he did not object to sentencing in the trial court. We agree.

On June 24, 2004, the United States Supreme Court issued its decision in Blakely v. Washington (2004) 542 U.S. 296, 303-305, holding that a defendant's right to jury trial was violated when a court imposed a sentence exceeding the standard range on the basis of facts neither proven to a jury beyond a reasonable doubt nor admitted by the defendant.

Defendant's sentencing hearing was held on July 9, 2004, but defendant did not challenge the court's authority to impose an aggravated term on Blakely grounds. The failure to raise this issue in the trial court forfeits defendant's claim here.  [Citations.]

/////

---

[6] Section A of the appellate court's decision concerns an issue of state law not before this court.

Even if we were to deem defendant's claim properly before us, it is unavailing.   In <u>Black II</u>, the California Supreme Court applied <u>Cunningham</u> and concluded that "so long as a defendant is eligible for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury." (<u>Black II</u>, supra, --- Cal.4th at p. ---- [at p. 12].)   "Under California's determinate sentencing system, the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term. [Citation.]   Therefore, if one aggravating circumstance has been established in accordance with the constitutional requirements set forth in <u>Blakely</u>, the defendant is not 'legally entitled' to the middle term sentence, and the upper term sentence is the 'statutory maximum.' " (<u>Id.</u> at p. ---- [at p. 13].)

The court held that "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." (<u>Black II</u>, <u>supra</u>, --- Cal.4th at p. ---- [at p. 17].)

Here, the trial court cited defendant's record as an aggravating circumstance.   The probation report described three juvenile adjudications in 1996, two for vehicle theft and one for misdemeanor theft.   Defendant's adult record consisted of a prior conviction for misdemeanor theft in 1998, and a Florida misdemeanor conviction in 2000 for petite theft.

Under <u>Black II</u>, the trial court could properly rely on defendant's prior convictions and impose an aggravated sentence. (<u>Black II</u>, supra, --- Cal.4th at p. ---- [at p. 17].) There was no error.

(Lod. Doc. 16 at 12-14.)

3. <u>Legal Standards</u>

While the imposition of an upper term based on factors not found by the jury generally violates the Sixth Amendment, the Supreme Court has retained an exception for findings of a defendant's prior convictions.  <u>Cunningham v. California</u>, 549 U.S. 270, 274-275 (2007).  In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), the Supreme Court held that, except for the fact of a prior conviction, any facts that increase a defendant's sentence beyond the statutory maximum must be proved to a jury beyond a reasonable doubt.  A judge may find "the fact of a prior conviction."  <u>See</u> <u>Almendarez–Torres</u>, 523 U.S. at 247.  Courts may reasonably disagree

1    about the boundaries of the "prior conviction" exception.  Wilson v. Knowles, 638 F.3d 1213,

2    1215 (9th Cir. 2011); see Kessee v. Mendoza–Powers, 574 F.3d 675, 677 (9th Cir. 2009) ("[T]he

3    task of determining the precise contours of the exception has been left to the federal appellate

4    courts.").

5           With respect to use of juvenile adjudications as an aggravating factor in sentencing, the

6    Ninth Circuit has held that:

7                    [T]he 'prior conviction' exception to Apprendi's general rule must
                     be limited to prior convictions that were themselves obtained
8                    through proceedings that included the right to a jury trial and proof
                     beyond a reasonable doubt.  Juvenile adjudications that do not
9                    afford the right to a jury trial and a beyond-a-reasonable-doubt
                     burden of proof, therefore, do not fall within Apprendi's "prior
10                   conviction" exception.

11   Tighe, 266 F.3d at 1194.

12          However, in applying the AEDPA standard of review, the rule adopted by the Ninth

13   Circuit in Tighe is not "clearly established federal law 'as determined by the Supreme Court of

14   the United States.'"  Boyd v. Newland, 467 F.3d 1139, 1152 (9th Cir. 2006) (citing 28 U.S.C. §

15   2254(d)(1)).  In Boyd, the Ninth Circuit recognized that the Third, Eighth, and Eleventh Circuits,

16   as well as California courts, have held that the Apprendi "prior conviction" exception includes

17   non-jury juvenile adjudications, which can be used to enhance a defendant's sentence.  Id. (citing

18   United States v. Burge, 407 F.3d 1183 (11th Cir. 2005), United States v. Jones, 332 F.3d 688, 696

19   (3d Cir. 2003), and United States v. Smalley, 294 F.3d 1030, 1033 (8th Cir. 2002)).  Thus, the

20   court in Boyd concluded,

21                   in the face of authority that is directly contrary to Tighe, and in the
                     absence of explicit direction from the Supreme Court, we cannot
22                   hold that the California courts' use of Petitioner's juvenile
                     adjudication as a sentencing enhancement was contrary to, or
23                   involved an unreasonable application of, Supreme Court precedent.

24   467 F.3d at 1152.

25          The Supreme Court has declined to extend Apprendi to the context of consecutive

26   sentences imposed for multiple offenses.  Oregon v. Ice, 555 U.S. 160 (2009) (holding that Sixth

27   Amendment allows for judge, not jury, to find facts necessary to the imposition of consecutive

28   sentences for multiple offenses).

1    4. <u>Discussion</u>

2        Respondent argues that this claim is procedurally defaulted due to petitioner's failure to

3    object at sentencing.  The Supreme Court has found a district court may reach the merits of a

4    habeas petitioner's claim where, as here, the merits are "easily resolvable against the petitioner

5    whereas the procedural-bar issue involve[s] complicated issues of state law." Lambrix v.

6    Singletary, 520 U.S. 518, 525 (1997); see also Kuhali v. Reno, 266 F.3d 93, 101 (2d. Cir. 2001)

7    ("It is well settled that the doctrine of procedural default is prudential rather than jurisdictional in

8    nature. E.g. Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2d. Cir.

9    2000) ('The doctrine of procedural default is based on considerations of comity and finality, and

10   not on a jurisdictional limitation of the power of a federal court . . . to look beyond a state

11   procedural default and consider the merits of a defaulted claim . . .'")).  Thus the undersigned

12   turns to the merits of the claim.

13       While conceding that an upper-term sentence can be based on "the *fact* of a prior

14   conviction," petitioner argues that "the upper term consecutive sentences in this case were not

15   based on the 'fact' of Mr. Bailey's prior conviction(s), they were based on the trial Judge's . . .

16   assumption *that three juvenile misdemeanor convictions and two adult misdemeanor convictions*

17   *are 'numerous' and therefore justify a sentence of life with no possibility of parole*."  (ECF No.

18   66 at 34) (emphasis in original).

19       In Ramirez v. Lewis, 2013 WL 4815952, at *35 (E.D. Cal. 2013), the court rejected a

20   similar argument, reasoning that a trial court's finding of

21           'numerous prior convictions' . . . cannnot meaningfully be
             distinguished from Blakely's formulation, approving the use of 'the
22           fact of a prior conviction' to increase a sentence. [7]  It would not
             make sense to say that the trial court is entitled to rely on one prior
23           conviction, but not on several.  In fact, a report of numerous or
             increasingly serious prior convictions in the probation report and
24           the prosecutor's brief was just what the [California] Supreme Court
             found adequate in Black II, rejecting the argument that this is not
25           the same thing as the simple fact of a prior conviction.[8]

26   ───────────────
     [7] Blakely v. Washington, 542 U.S. 296 (2004).

27
     [8] People v. Black, 41 Cal. 4th 799, 819 (2007) ("Black II") ("Defendant contends that he was
28   entitled to a jury trial on the aggravating circumstance of his prior criminal history because, even

                                              22

1    Here, the state courts reasonably determined that petitioner's upper-term sentences did not

2    violate his constitutional rights, as they were based on one or more prior convictions.  Indeed, had

3    the state courts relied only on petitioner's juvenile convictions to impose the upper term, this

4    would not have violated "clearly established federal law" under AEDPA.  See Boyd, 467 F.3d at

5    1152.  Nor did the imposition of consecutive sentences for multiple offenses violate clearly

6    established federal law.  Thus petitioner is not entitled to habeas relief on this basis.

7    Petitioner also argues that there was insufficient evidence to impose the upper-term

8    sentences, violating his Constitutional right to due process.  The undersigned finds that

9    petitioner's prior convictions were sufficiently established by the evidence, as his "criminal

10   history was detailed in the confidential probation report prepared for his sentencing, and

11   petitioner does not contest the accuracy of that report."  Bell v. Trimble, 2013 WL 5217240, *10

12   (C.D. Cal. 2013) (collecting cases).   Nor did petitioner contest the truth of these convictions at

13   his sentencing.  As the state court's rejection of this claim was not contrary to, nor involved an

14   unreasonable application of, clearly established federal law, petitioner is not entitled to habeas

15   relief on this ground.

16   In sum, based on the foregoing, the undersigned will recommend that the petition be

17   denied.

18   IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus (ECF No.

19   1) be denied.

20   These findings and recommendations are submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

22   after being served with these findings and recommendations, any party may file written

23   objections with the court and serve a copy on all parties.  Such a document should be captioned

24   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

25   shall be served and filed within fourteen days after service of the objections.  The parties are

26

27   if the trial court may properly decide whether a defendant has suffered a prior conviction, a jury
     must determine whether such convictions are numerous or increasingly serious.  Defendant,
28   however, reads the 'prior conviction' exception too narrowly.")

23

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   Dated:  January 22, 2015

4   _____
    CAROLYN K. DELANEY

5   UNITED STATES MAGISTRATE JUDGE

6

7   2 / bail0084.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28